UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANIEL MORRIS JOHNSON,

    Defendant.

CRIMINAL NO. 14-159 (DWF/TNL)

REPORT AND RECOMMENDATION

  Clifford B. Wardlaw, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for the Government; and

  James E. Ostgard, II, **Ostgard Law Office**, P.O. Box 582536, Minneapolis, MN 55458, for Defendant.

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Daniel Morris Johnson's Motion to Suppress Results of Search (ECF No. 19) and Motion to Suppress Statements (ECF No. 20). The Court held a motions hearing on August 7, 2014. (ECF No. 29.) James Ostgard, II, represented Johnson. Clifford Wardlaw represented the Government. The Court heard the testimony of Deputy Brian Hanson of the Chippewa County Sheriff's Office. The Government offered and the Court received the following exhibits:

- Government Exhibit 1 is a search warrant issued by Washington County.
- Government Exhibit 2 is a search warrant issued by Chippewa County.
- Government Exhibit 3 is a CD audio recording of Deputy Hanson's interview of Johnson.

1

I.  **FACTS**

On November 4, 2010, Deputy Hanson interviewed a juvenile female ("BM") in response to a note that had been provided to the Chippewa County Sheriff's Office. During this interview, BM stated that about two weeks before Christmas 2009, Johnson was dating BM's mother. (Gov't Ex. 1 at 2.) When BM came home one day, Johnson told her that a friend had bought her a new cell phone, but that she could not see it or have it unless he saw her naked. (*Id.*) Johnson also stated that he wanted to photograph BM naked. (*Id.*) BM told Deputy Hanson that Johnson had taken pictures of her naked and downloaded them onto the computer that he had moved to his mom's house in Woodbury, Minnesota, where he was now living. (*Id.*) BM also told Deputy Hanson that Johnson had intercourse with her at least four times between roughly Christmas 2009 and Johnson's arrest on an unrelated charge in February 2010. (*Id.*)

On November 10, 2010, Deputy Hanson obtained a search warrant from Judge Scherer in Washington County that authorized (1) the search of 6064 Ridge Drive in Woodbury, Minnesota, and (2) the seizure of "Computers, Computer Disks, thumb drives and any computer hardware" as well as "Cameras, Cell phones, explicit pictures or any pictures of [the] victim or her family." (*Id.* at 1.) The officers executing the warrant found Johnson downstairs in a locked room, arrested him, and placed him in the back of a squad car. (Gov't Ex. 2 at 2.) In the search, officers found and seized multiple computer towers, hard drives, and USB storage devices, as well as two digital cameras. (*See* Gov't Ex. 1 at 6.)

After the search was complete, Deputy Hanson transported Johnson to Chippewa County. (Gov't Ex. 2 at 2.) During the drive from Woodbury to Chippewa County, Johnson repeatedly engaged Deputy Hanson in conversation about various topics including what was seized from his house, which computers the police found, and other facts surrounding his arrest. (Gov't Ex. 3.) While they were stopped for gas, Johnson asked if he would be able to help Deputy Hanson open up his computers to get to everything inside. Johnson also offered to help Deputy Hanson get certain information that he said would help police corroborate his version of events and identified some of the contents on some of the seized computers.

When they reached the Chippewa County Sheriff's office, Deputy Hanson read Johnson his Miranda rights. After he finished Mirandizing Johnson, Deputy Hanson asked, "With these rights in mind, do you with to talk to me now?" Johnson responded, "Um, what kind of deal can I get?" Deputy Hanson repeated, "With these rights in mind, do you wish to talk to me now?" Johnson then responded, "We'll see where the questioning goes, and we'll go from there." Johnson went on to make several statements in response to direct questioning from Deputy Hanson.

The next day, Deputy Hanson was having difficulty accessing the computers that were seized during the search the previous day. Deputy Hanson then returned to the jail and asked Johnson if he was still willing to help him access his computer, and Johnson said that he was. Johnson gave Deputy Hanson his password, but Deputy Hanson was still unable to access the computer's files. After working with the computer for a few moments, Johnson said, "Oh, I know what's wrong," took the side panel of the tower off,

made a few adjustments to the hardware, put it all back together, and opened the files Deputy Hanson was looking for—specifically, the video file of Johnson and BM having sexual intercourse. At this point, Deputy Hanson put himself between Johnson and the computer to protect the evidence from deletion.

Johnson now moves to suppress (1) evidence seized from the Johnson's Woodbury, Minnesota home; and (2) statements Johnson made during custodial interrogation after the search.[1]

## II. ANALYSIS

### A. Search of Johnson's Woodbury Home

Johnson challenges the admission of fruits from the search of his Woodbury home, arguing that the supporting affidavit failed to establish probable cause because (1) the information in the affidavit failed to corroborate any of BM's allegations, and (2) the information in the affidavit was stale. Deputy Hanson's affidavit in support of the search warrant application contained, *inter alia*, the following information: BM stated that Johnson had asked to see her naked in exchange for giving her a new cell phone, had penetrated her with his finger after she undressed, had taken pictures of her naked, and had downloaded those pictures onto his computer at his mom's house in Woodbury; BM stated that she and Johnson had sexual intercourse at least four times after Christmas

---

[1] Johnson did not challenge the admission of any evidence obtained after Deputy Hanson returned to Johnson's cell and asked for his help accessing the files in the seized computers. Accordingly, the Court will not address any issues related to the admissibility of evidence acquired as a result of Deputy Hanson's request that Johnson help access files in the seized computers after the initial custodial interview.

2009; and BM stated that Johnson would sexually assault her about once a week from Christmas 2009 until he was arrested in February 2010.

Probable cause determinations "d[o] not deal with hard certainties, but with probabilities." *Illinois v. Gates*, 462 U.S. 213, 231 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). Facts supporting a search warrant "must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." *United States v. Palega*, 556 F.3d 709, 715 (8th Cir. 2009) (quoting *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993)).

Johnson argues that the warrant application fails to establish probable cause because the affidavit fails to allege that: (1) BM was a minor at the time of her interview with law enforcement; (2) any photographs that Johnson took were necessarily child pornography and therefore illegal to possess; or (3) BM had first-hand knowledge of Johnson's "habit" of downloading his photographs to his computers in Woodbury. This Court's review, however, is strictly limited to whether the affidavit established a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Gates*, 462 U.S. at 236.

5

The affidavit recounts Deputy Hanson's interview with BM and clearly alleges several occurrences of sexual assault of a minor and possible production of child pornography. The affidavit states the period of time in which the alleged assaults occurred, the specific actions comprising the alleged assaults, and the storage location for the possible child pornography. The affidavit also clearly identifies BM as a juvenile female. Although the fact that Johnson was alleged to take photographs of BM nude does not necessarily imply that those photographs would be child pornography, the totality of the circumstances—the allegations of sexual assault, the repeated sexual encounters with a minor when her mother was not home, and the statements Johnson made to BM in addition to the alleged photographs—provided a substantial basis for the authorizing court to conclude that evidence of sexual assaults or production of child pornography might be found on Johnson's computers. Moreover, the affidavit does not, as Johnson describes it, rely solely on the words of an informant. BM is the victim of the alleged crimes, and "law enforcement officers are entitled to rely on information supplied by the victim of a crime, absent some indication the information is not reasonably trustworthy or reliable." *United States v. Wallace*, 550 F.3d 729, 734 (8th Cir. 2008) (citing *United States v. McKinney*, 328 F.3d 993, 994 (8th Cir. 2003)).

Johnson also argues that the information in the supporting affidavit was stale. The Court disagrees. "The timeliness of the information supplied in an affidavit depends on the circumstances of the case, including the nature of the crime under investigation; the lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." *United States v.*

6

*Horn*, 187 F.3d 781, 786 (8th Cir. 1999) (citing *United States v. Koelling*, 992 F.2d 817, 822-23 (8th Cir. 1993)). Furthermore, this Circuit recognizes that evidence of this nature is not likely to be destroyed. *See United States v. Jakobetz*, 955 F.2d 786, 804 (2d Cir. 1992) (recognizing that perpetrators of sexual abuse often keep evidence of their crimes); *United States v. Lemon*, 590 F.3d 612, 614-15 (8th Cir. 2010) (possessors of child pornography often retain their materials for a long time).

The affidavit sets forth that Johnson took nude photographs of BM while she was a juvenile and downloaded those photographs onto his computer at his mother's house in Woodbury. The affidavit also stated that Johnson always downloaded his photographs onto his computer in Woodbury. Based on the totality of the circumstances, the Court concludes that the information in the affidavit raised a fair probability that a search of Johnson's computers would result in the discovery of evidence of child pornography or sexual assault of a minor. Accordingly, Johnson's challenge to the warrant must fail.

### B. Statements Resulting from Custodial Interrogation

Johnson challenges the admission of his statements to Deputy Hanson, arguing that (1) his arrest was not supported by probable cause, and therefore any statements made following his arrest must be suppressed, and (2) his statements were obtained in violation of his Fifth Amendment rights because he never waived his *Miranda* rights.[2]

Johnson's argument that his warrantless arrest was not supported by probable cause is meritless. "[A] warrantless arrest by a law officer is reasonable . . . where there is

---

[2] In his post-hearing memorandum, Johnson withdrew his argument that his statements constituted an invalid police-coerced confession in violation of his Fifth Amendment Rights. (Def.'s Mem. in Supp., ECF No. 31, at 4.)

probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (cited by *United States v. Jones*, 535 F.3d 886, 890 (8th Cir. 2008)). A "probability or substantial chance of criminal activity, rather than an actual showing of criminal activity," is sufficient to generate probable cause. *United States v. Torres-Lona*, 491 F.3d 750, 756 (8th Cir. 2007). As set forth above, the affidavit supporting the search warrant was sufficient to lead a reasonable person to believe that Johnson had sexually assaulted BM and produced child pornography. The same probable cause finding supports Johnson's arrest. Because Johnson's warrantless arrest was supported by probable cause, his arrest did not violate his Fourth Amendment rights, and his subsequent custodial statements are not poisoned fruit that require suppression.

Johnson's second argument is similarly unavailing. A suspect subjected to custodial interrogation "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *United States v. Cajas-Maldonado*, 13 Fed. App'x 469, 473 (8th Cir. 2001). A confession obtained as a result of custodial interrogation is admissible only where the defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights. *Id.* The Government has the burden of proving that a defendant's waiver was knowing, intelligent, and voluntary. *Id.*

A valid waiver, on the other hand, "need not assume any particular form; it may be made in writing on a printed format or it may be made orally by replying to

questions . . . ." *United States v. Zamarripa*, 544 F.2d 978, 981 (8th Cir. 1976). "'Being evasive and reluctant to talk is different from invoking one's right to remain silent.'" *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007) (quoting *Mann v. Thalacker*, 246 F.3d 1092, 1100 (8th Cir. 2001)). "[W]aiver may be inferred from the fact that the defendant responded to questions posed by the interviewer after being advised of his rights." *United States v. House*, 939 F.2d 659, 662 (8th Cir. 1991) (citing *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). To determine whether a defendant has unequivocally invoked the right to remain silent or whether law enforcement obtained a valid waiver of that right, the defendant's statements and the surrounding circumstances are considered as a whole. *Simmons v. Bowersox*, 235 F.3d 1124, 1131 (8th Cir. 2001); *Zamarripa*, 544 F.2d at 981.

Upon arriving in the interrogation room, Deputy Hanson recited Johnson his *Miranda* rights. When he was finished, he asked whether, with those rights in mind, Johnson wished to continue speaking with him. Johnson responded, "Um, what kind of deal can I get?" Rather than answer Johnson's question, Deputy Hanson then repeated, "With these rights in mind, do you wish to talk to be now?" Johnson responded, "We'll see where the questioning goes, and we'll go from there." Deputy Hanson then commenced interrogating Johnson.

Johnson argues that this exchange does not constitute a waiver of his rights, and therefore, any statements made in response to subsequent questioning must be suppressed. The Court disagrees. Deputy Hanson read Johnson his *Miranda* rights. Johnson is of at least average intelligence, has experience with the criminal justice system

9

as shown by an earlier arrest and jail time, and showed no signs of intoxication. Indeed, Johnson's initial hesitance to waive his *Miranda* rights and answer Deputy Hanson's questions shows that he was aware of his rights and what the effect of waiving them might be. His statement that he wanted to "see where the questioning [went], and . . . go from there" is not an "unequivocal expression of a desire to remain silent." *Ferrer-Montoya*, 483 F.3d at 569.

Johnson argues that a refusal to sign a written *Miranda* waiver may constitute an invocation of a defendant's rights rather than support an inference of a waiver. This argument, however, is inapplicable to the facts of this case. Although Johnson did not sign a written *Miranda* waiver, he was never offered a written *Miranda* waiver to sign. Even if he had refused to sign a *Miranda* waiver, such a refusal would not necessarily require a different result; courts have sometimes found that under certain circumstances, a valid waiver existed despite a defendant's active refusal to sign a written acknowledgement of rights and formal waiver. *E.g.*, *Zamarripa*, 544 F.2d at 980-81. The totality of the circumstances show that Johnson, a man of average intelligence who had experience with the criminal justice system and displayed no signs of intoxication, answered Deputy Hanson's questions after being informed of his right to refuse doing so. As such, the Court finds that Johnson waived his *Miranda* rights, and that his waiver was knowing, intelligent, and voluntary. Accordingly, Johnson's motion to suppress statements will be denied.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Johnson's Motion to Suppress Results of Search (ECF No. 19) and Motion to Suppress Statements (ECF No. 20) be **DENIED.**

Date: September 18, 2014

s/ Tony N. Leung
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*United States v. Johnson*
File No. 14-cr-159 (DWF/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **October 3, 2014**.