UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 14-159 (DWF/TNL) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Daniel Morris Johnson, | |
| Defendant. | |

Daniel Morris Johnson, *Pro Se.*

Charles J. Kovats, Jr., and Katharine T. Buzicky, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

# INTRODUCTION

This matter is before the Court on Defendant Daniel Morris Johnson's, ("Johnson") *pro se* motion for compassionate release in light of the COVID-19 pandemic. (Doc. No. 141 ("Motion").)[1] The United States of America (the "Government") opposes Johnson's Motion.[2] (Doc. No. 154.) For the reasons discussed below, the Court respectfully denies Johnson's Motion.

---

[1] Johnson cites both 18 U.S.C. § 3582(c)(1)(A)(i) ("Compassionate Release") and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), as grounds for his release. As discussed below, the Court finds that Johnson's Motion fails under either analysis.

[2] Johnson's response to the Government's opposition was due April 2, 2021. (Doc. No. 153.) He did not file a response.

## BACKGROUND

Following a bench trial, Johnson was convicted of one count of Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) and 2251)(e).[3] (Doc. No. 61 at 6.) On April 29, 2016, this Court sentenced him to 354 months' imprisonment to be followed by a 15-year term of supervised release. (Doc. Nos. 107, 108.)

Johnson is currently incarcerated at Pekin FCI in Pekin, IL with an anticipated release date of June 18, 2041. Federal Bureau of Prisons, Inmate Locator, *https://www.bop.gov/inmateloc/* (last visited April 19, 2021). Pekin FCI reports no active COVID-19 case among its inmates and 12 among its staff, 757 inmates and 72 staff who have recovered, and no inmate of staff deaths from the virus. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited April 19, 2021). To date, the Bureau of Prisons ("BOP") has performed 1159 tests for COVID-19 at Pekin FCI with 771 of them positive for the virus, and 1 test pending. *Id.* Moreover, 122 staff and 355 inmates at the facility have been fully inoculated against COVID-19. *Id.* On March 3, 2021, Johnson received the first dose of the Pfizer-BioNTech COVID-19 vaccine. (Doc. No. 155 at 3-90 ("Medical Records") at 32.)

Johnson now moves for compassionate release on the grounds that he is at increased risk of severe infection from COVID-19 because he is 57 years old and suffers from hypertension, chronic obstructive pulmonary disorder, high cholesterol, seizures,

---

[3] The Court issued its Findings of Fact, Conclusions of Law, and Order for Conviction on July 7, 2015. (Doc. No. 61.)

heart disease, and is a cancer survivor.[4] (Motion at 3-4; *see also* Medical Records at 26-27, 41.) Johnson also expresses concern about his increased risk of contracting COVID-19 in a prison setting and asserts that the conditions at FCI Pekin are particularly abhorrent.[5] (*Id.* at 7-10, 29-34.) Johnson seeks a reduction in sentence to time served or release to home confinement. (*Id.* at 36.)

## DISCUSSION

### I.     The CARES Act

The First Step Act ("FSA") was enacted into law on December 21, 2018. *See* Pub. L. No. 115-391, 132 Stat. 5194. As relevant here, the First Step Act revised the provisions for early release to halfway houses or home confinement that had been in place under the Second Chance Act of 2007. *See* 18 U.S.C. § 3624(c)(1).

In its previous form, Section 3624 authorized placement of prisoners into home confinement, providing that the BOP may place a prisoner for 10 percent of the term of his or her imprisonment or six months, whichever is shorter. 18 U.S.C. § 3624(c)(2). Now, as amended, Section 3624 additionally provides that the BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." *Id.*; FSA § 602.

---

[4]    Johnson also states that he has a family history of heart disease and cancer. (Motion at 4-5.)

[5]    The record reflects that Johnson tested positive for COVID-19 on December 18, 2020. (Medical Records at 19-20, 26, 31.) He was initially asymptomatic and listed as recovered on January 4, 2021. (*Id.* at 26.) He subsequently developed chest pains and was admitted to a community hospital on February 1, 2021. (*Id.* at 4.) He returned to his housing unit at Pekin FCI on February 11, 2021. (*Id.* at 3.)

Notably, the FSA did not change 18 U.S.C. § 3624(c)(4), which states that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621," which in turn provides that the BOP "shall designate the place of the prisoner's imprisonment."  18 U.S.C. §§ 3624(c)(4), 3621(b).

On April 3, 2020, former Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act to expand the group of inmates who may be considered for home confinement given emergency conditions caused by the COVID-19 virus and its effect on prison populations.  The BOP immediately began reviewing all inmates with COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, to determine which inmates are suitable candidates for home confinement.  Federal Bureau of Prisons, BOP Update on COVID-19 & Home Confinement, *www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp* (last visited April 19, 2021).  To date, the BOP has transferred over 24,000 inmates to home confinement.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited April 19, 2021).

As noted above, the BOP has exclusive authority to determine the placement of prisoners.  *See* 18 U.S.C. § 3624(c)(2).  Neither the CARES Act nor the FSA alters this authority.  *See United States v. James*, Cr. No.15-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr 21, 2020); *United States v. Kluge*, Cr. No. 17-61 (DWF), 2020 WL 209287, at *4 (D. Minn. Jan 14, 2020); *United States v. Roy*, Cr. No. 15-303 (MJD), 2019 WL 6910069, at *1 (D. Minn. Dec. 19, 2019); *Ward v. Bureau of Prisons*, Civ. No. 3:19-770-D-BN, 2019 WL 1930025, at *2 (N.D. Tex. Apr. 2, 2019), *report and*

*recommendation adopted*, Civ. No. 3:19-0770-D, 2019 WL 1924903 (N.D. Tex. Apr. 30, 2019); *see also Xiao v. La Tuna Fed. Corr. Inst.*, Civ. No. EP-19-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement.").

Courts have consistently held that placement questions are not reviewable. *See, e.g.*, 18 U.S.C. § 3621(b); *United States v. Shields*, Cr. No. 12-00410-BLF-1, 2019 WL 2359231, at *5 (N.D. Cal. June 4, 2019) ("The authority to determine [defendant's] placement for the remainder of his sentence is vested solely within the discretion of the BOP."); *United States v. Parish*, Cr. No. 14-166, 2016 WL 7441142, at *1 (E.D. La. Dec. 27, 2016); *Deffenbaugh v. Sullivan*, Cr. No. 5:19-HC-2049-FL, 2019 WL 1779573, at *2 (E.D.N.C. Apr. 23, 2019); *Ward*, 2019 WL 1930025, at *3 (extensive discussion); *Rizzolo v. Puentes*, Civ. No. 119-00290SKOHC, 2019 WL 1229772, at *3 (E.D. Cal. Mar. 15, 2019); *United States v. Perez-Asencio*, Cr. No. 18-3611-H, 2019 WL 626175, at *4 (S.D. Cal. Feb. 14, 2019); *United States v. Burkhart*, Cr. No. 6:03-036-DCR, 2019 WL 615354, at *2 (E.D. Ky. Feb. 13, 2019); *Parsons v. Howard*, Civ. No. 3:18-1406, 2019 WL 469913, at *4 (M.D. Pa. Feb. 6, 2019); *Burg v. Nicklin*, Civ. No. EP-19-24-FM, 2019 WL 369153, at *3-4 (W.D. Tex. Jan. 29, 2019). Furthermore, "[i]t is well established that prisoners do not have a constitutional right to placement in a particular prison facility or place of confinement." *James*, 2020 WL 1922568, at *5 (citing *Khdeer v. Paul*, Civ. No. 18-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018)).

In short, because release to home confinement is a placement decision, the Court finds that it is solely within the BOP's discretion to dictate. *See* 18 U.S.C. § 3624(c). Accordingly, to the extent that Johnson seeks release to home confinement, the Court respectfully denies his Motion because it lacks the authority to consider his request.

## II.     Compassionate Release

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).[6]

---

[6] While the Statement refers only to motions filed by the Director of the BOP, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants. The Court acknowledges that there is ongoing litigation surrounding this issue and that other courts have found that the Statement does not apply to motions initiated by a defendant. *See McCoy*, 981 F.3d 271 at 281; *United States v. Brooker,* 976 F.3d 228 at 234 (2d Cir. 2020); *United States v. Jones,* 980 F.3d 1098 at 1110-11 (6th Cir. Nov. 20, 2020); *United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir. Nov. 20, 2020). The Court also notes that the Eighth Circuit has not yet considered the issue. Here, even if the Court were to exercise broader discretion, it would still find that Johnson's circumstances do not meet the demanding standard for compassionate release.

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with [the Sentencing Commission's] policy statement." Statement. The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[7] *Id.*

The record reflects that Johnson requested compassionate release from the warden at Pekin FCI on April 30, 2020 and that it was denied on May 19, 2020.[8] (Doc. No. 141-1 at 1-2.) Accordingly, the Court finds that Johnson's Motion is ripe for review.

---

[7]  Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

[8]  Johnson's request for reconsideration and two appeals were also denied. (*See* Doc. No. 141-1 at 3-5.)

After a careful review of Johnson's Motion and other documentation, including his Medical Records, the Court finds that his circumstances do not meet the demanding standard necessary for compassionate release. Johnson's Medical Records reflect diagnoses for high cholesterol, hypertension, and an unspecified form of heart disease.[9] (*See* Medical Records at 26.) While one or more of these conditions may increase Johnson's risk of severe illness from COVID-19, the Court finds no indication that any medical condition, alone or in combination with the presence of COVID-19 at Pekin FCI, has diminished or will diminish Johnson's ability to provide self-care while in prison.[10] While it is unfortunate that Johnson contracted COVID-19 in December, the record reflects that he received appropriate care and largely recovered. (*See* Medical Records at 3-4.)

Moreover, the Court finds that any risk posed by COVID-19 is largely mitigated by the fact that Johnson has received one vaccine dose and will soon be fully inoculated

---

[9]   Johnson's Medical Records also mention a seizure disorder and a self-report of Stage 1 skin cancer but do not indicate ongoing treatment for either condition. (*See* Medical Records at 27, 41.) His Medical Records do not reflect a chronic obstructive pulmonary disorder. (*See generally id.*)

[10]   According to the Centers for Disease Control and Prevention ("CDC"), hypertension and some heart conditions may increase a person's risk of severe illness from COVID-19. *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited April 19, 2021). Based on CDC guidance, the Court also finds that Johnson's age, 57 years old, is an insufficiently extraordinary and compelling risk factor. *See* Centers for Disease Control and Prevention, Coronavirus Disease: Older Adults, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html* (last visited April 19, 2021).

against the virus.  *See, e.g.*, *United States v. Wakefield*, Cr. No. 1:19-95, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) (denying compassionate release despite defendant's obesity, diabetes, and hypertension where he previously tested positive for COVID-19 and received first vaccine dose); *United States v. McGill*, Cr. No. SAG-15-37, 2021 WL 662182, at *5 (D. Md. Feb. 19, 2021) (denying compassionate release where defendant had measure of immunity after recovering from COVID-19 and received first vaccine dose); *United States v. Beltran*, Cr. No. 6:16-4(SSSS)-4, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to defendant with underlying health conditions when defendant had received first vaccine dose); *United States v. Grummer*, Cr. No. 08-4402, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release to defendant with several chronic medical conditions when defendant had been fully vaccinated against COVID-10).

According to the CDC, the Pfizer-BioNTech COVID vaccine that Johnson received is highly effective, preventing 95% of infections in clinical trials.  *See* Centers for Disease Control and Prevention, Information about the Pfizer-BioNTech COVID-19 Vaccine, *https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html* (last visited April 19, 2021).  To the extent Johnson remains concerned about contracting COVID-19 after receiving the vaccine, the Court finds this fear entirely speculative and declines to grant release based on a generalized fear of reinfection.  *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (a generalized fear of contracting COVID-19 is an insufficiently extraordinary and compelling reason to warrant release); *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020)

9

(same); *see also United States v. Garcia*, Cr. No. 16-333, 2020 WL 4018223, at *2 (D. Minn. July 16, 2020) (declining to grant compassionate release based on possibility of severe reinfection).

It is truly unfortunate that so many inmates at Pekin FCI, including Johnson, contracted the virus. It is promising that the facility currently has just twelve active cases of COVID-19. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited April 19, 2021). Moreover, despite its once high infection rate, Pekin FCI was able provide effective medical treatment such that all inmates who contracted the virus successfully recovered. *Id.* Pekin FCI also continues to employ measures to mitigate the spread of COVID-19.[11] It is also promising that BOP has successfully administered over 136,000 doses of the COVID-19 vaccine to all staff and inmates who wish to receive it, including Johnson. Federal Bureau of

---

[11]   Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system." *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited April 19, 2021). Those steps include limiting visits and internal movement, increased hygiene measures, screening of both staff and inmates and virtual legal visits. *See* Federal Bureau of Prisons, BOP Modified Operations, *https://www.bop.gov/coronavirus/covid19_status.jsp* (last visited April 19, 2021). The BOP periodically updates its Plan and is currently in Phase Nine. Federal Bureau of Prisons, Coronavirus (COVID-19) Phase Nine Action Plan, *https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf* (last visited April 19, 2021).

As discussed above, the BOP is also exercising greater authority to designate inmates for home confinement. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited April 19, 2021). As discussed above, since March 2020, the BOP has transferred more than 24,000 inmates to home confinement. *Id.*

10

Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited April 19, 2021). Sadly, until the vaccine is more widely available, some level of continued spread is inevitable. In spite of the risk, the BOP must continue to carry out its charge to incarcerate sentenced criminals to protect the public and any release must be balanced against the danger it poses to society.

Here, the Court finds that even if Johnson did present an extraordinary and compelling reason, release is not appropriate because the Court cannot conclude that Johnson does not pose a danger to the safety of the community. Specifically, after a pattern of predatory conduct, the Court finds no indication that Johnson has accepted responsibility for his actions, that he recognizes the impact his actions have had on others, or that he will not reoffend.[12] (*See* Doc. No. 67 ¶¶ 5-10, 31-33; *see also* Doc. No. 155 at 91-103.) Likewise, the Court finds that the § 3553(a) sentencing factors weigh strongly against release. Specifically, the Court finds that such a significant sentence reduction would not adequately address the seriousness of the charges of Johnson's conviction, promote respect for the law or provide a just punishment.

## CONCLUSION

For the reasons set forth above, the Court finds that Johnson fails to present an extraordinary and compelling reason to warrant compassionate release. The Court also finds that release is not appropriate because it cannot conclude that Johnson poses no

---

[12] Johnson's release plan reflects only how he will ensure his own safety from COVID-19; it fails to reflect any intent to obtain sex-offender treatment or therapy or provide any indication of how he intends to avoid situations involving children. (*See* Motion at 37.)

danger to the safety of the community and because the § 3553(a) factors weigh against release.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Daniel Morris Johnson's *pro se* motion for compassionate release in light of the COVID-19 pandemic (Doc. No. [141]) is respectfully **DENIED**.

Dated:  April 20, 2021                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge